**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

S. STANLEY YOUNG *et al.*,

    *Plaintiffs*,

  v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY *et al.*,

    *Defendants*.

Civil Action No. 21-2623 (TJK)

**<u>MEMORANDUM OPINION</u>**

  S. Stanley Young and Louis Anthony Cox, Jr. challenge the Environmental Protection Agency's efforts to reconstitute several advisory committees that, among other things, advise the agency on particulate matter air quality standards.  Plaintiffs were nominated for positions on the reconstituted committees but ultimately were not selected.  The two now allege, among other things, that the reconstituted committees violate the Federal Advisory Committee Act's requirement that advisory committee memberships be "fairly balanced" because there is no "industry representative" on the committees.  They seek a preliminary injunction halting the activities of one committee, arguing that Young will suffer irreparable harm—the inability to participate in that committee's deliberations—if the committee moves forward and meets late next week.  For the reasons explained below, the Court holds that Plaintiffs have failed to establish that Young will suffer irreparable harm absent a preliminary injunction.  The Court will therefore deny the motion for a preliminary injunction.

## I.    Background

### A.    Federal Advisory Committee Act

Federal agencies often rely on advisory committees, boards, and commissions to perform statutorily prescribed functions.  In 1972, Congress enacted the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 2 § 5, to establish standard operating procedures for advisory committees and to ensure accountability to Congress and the public.  *See Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 445–46 (1989).  At its core, FACA aimed to eliminate "wasteful expenditure of public funds for worthless committee meetings and biased proposals."  *Id.* at 453.

FACA requires qualifying advisory committees to meet certain standards.  Relevant here, FACA requires that legislation establishing an advisory committee must set forth certain criteria for the committee's membership.  Any such legislation must "require the membership of the advisory committee to be fairly balanced in terms of points of view represented and the functions to be performed by the advisory committee." 5 U.S.C. app. 2 § 5(b)(2).  In addition, establishing legislation must "contain appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest . . . ."  *Id.* § 5(b)(3).

### B.    Clean Air Scientific Advisory Committee

Defendant Environmental Protection Agency ("EPA") employs several advisory committees subject to FACA to aid in its statutorily required responsibilities.[1]  The Clean Air Act requires the EPA to "complete a thorough review of the . . . national ambient air quality standards" every

---

[1] Plaintiffs sued the EPA, the EPA Administrator, two advisory committees, and several committee members.

five years.  42 U.S.C. § 7409(d)(1).  To facilitate this review, Congress directed the EPA Admin-istrator to create an "independent scientific review committee."  *Id.* § 7409(d)(2)(A).  The com-mittee must have seven members, "including at least one member of the National Academy of Sciences, one physician, and one person representing State air pollution control agencies."  *Id.*  To satisfy this requirement, the EPA Administrator created the Clean Air Scientific Advisory Com-mittee ("the Committee").[2]  The Committee is charged with advising the EPA Administrator on new air quality standards and proposed revisions to existing ones.  To fulfill this role, the Com-mittee reviews policy assessments, scientific reports, and other analyses prepared by the EPA staff and provides its recommendations to the EPA Administrator.

When vacancies on the Committee arise, the EPA staff solicits nominations from the public and entertains public comment on nominees.  *See* ECF No. 19-1 ¶¶ 7, 15.  The EPA staff then reviews and considers the candidates and makes recommendations to the EPA Administrator for final selections.  *See id.* ¶¶ 7, 11, 15.  Relevant here, the EPA Administrator reconstituted the entire Committee in March 2021, dismissing all members.  The EPA staff then solicited nominations and received 115 candidate nominations and 88 public comments for the vacant Committee spots.  *Id.* ¶ 15.  Young was nominated for Committee membership but ultimately was not selected as a member or an alternate.  *Id.*

### C.    This Suit and Plaintiffs' Motion for Preliminary Injunction

This suit arises from an alleged failure of the selection process to yield advisory committees that comply with FACA and to comply with the Administrative Procedure Act ("APA").  In March

---

[2] The Committee's charter explains that the Committee "is required by Section 109 of the Clean Air Act (CAA)" and that the Clean Air Act outlines its objectives and scope as well.  "United States Environmental Protection Agency Charter:  Clean Air Scientific Advisory Committee," https://casac.epa.gov/ords/sab/sab_apex/r/files/static/v401/CASAC%202019%20Re-newal%20Charter%203.21.19%20-%20final.pdf (last visited February 16, 2022).

2021, the EPA Administrator removed the members of the Committee and the Science Advisory Board ("the Board"), another advisory committee subject to FACA, and announced they would be reconstituted.  *See* ECF No. 17 ¶ 6.  Several months later, the EPA Administrator selected new members for both the Committee and the Board.  Young and Cox were each nominated for service on both the Committee and the Board, but neither received an appointment to either advisory body. *See id.* ¶¶ 13, 19.  Before the reconstitution of both advisory committees, Young had served on the Board but not the Committee.  Cox had served on both the Committee and the Board.  *See id.*

Plaintiffs allege in the amended complaint that the reconstitution of the Committee and the Board violates FACA's "fairly balanced" requirement, as well as the APA, because neither committee now has an "industry representative" in its ranks.[3]  ECF No. 17 ¶¶ 1, 9.  Plaintiffs also argue that several members of the Committee have conflicts of interest that violate FACA and that the decision to reconstitute both committees was arbitrary and capricious.  *See id* ¶ 93–96.  Notably, neither Young nor Cox claim in the amended complaint that they are personally entitled to serve on the Committee or the Board.  The amended complaint alleges only that the Board and Committee are unlawful as currently constituted and that Plaintiffs were deprived of opportunities to compete fairly for membership.  *See id.*  ¶¶ 69–75.

Plaintiffs have moved for a preliminary injunction and for partial summary judgment on only Young's claims related to the Committee.  In the motion, they reiterate their claims that the EPA's reconstitution of the Committee violates FACA and the APA, and that "scientists with industry experience like [Young] have different perspectives and points of view" compared to the Committee's current members.  ECF No. 8-5 ¶ 18.  Along with those substantive claims about the

---

[3] Young amended the complaint to add Cox as a Plaintiff after he moved for a preliminary injunction.  ECF No. 17.  Cox later joined Young's motion.  ECF No. 18.

Committee's composition, they explain in greater detail that Young was injured when the EPA refused to "fairly adjudicate" his Committee nomination during the selection process, a misstep that he claims "necessarily precluded him from participating in the Committee's imminent deliberations." ECF No. 8-1 at 45. Notably, Plaintiffs offer no specific proof that the EPA refused to adjudicate Young's nomination fairly other than the new makeup of the Committee.

Plaintiffs also say that Young will suffer irreparable harm absent an injunction because he "will forever lose the opportunity to influence the EPA as a member of the Committee on this matter of significant national importance" if the Committee proceeds to meet without him. *Id.* at 43–44. By way of background, the Committee is set to review particulate matter air quality standards at meetings on February 25, 28, and March 4, 2022, which it does every five years. Plaintiffs seek a preliminary injunction enjoining the Committee "from conducting any committee or subcommittee activities" and enjoining the EPA and EPA Administrator from "receiving any recommendation or advice from the Committee." ECF No. 8-26 at 1. Defendants have opposed and cross-moved for partial summary judgment. *See* ECF No. 19.

## II.    Legal Standard

A preliminary injunction is an "extraordinary remedy" and is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. This Circuit's precedent states that these factors may be evaluated on a "sliding scale," and that "an unusually strong showing on one of the factors" may compensate for a subpar showing on another. *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009) (cleaned up). But after *Winter*, the Circuit has suggested

without deciding that a plaintiff must independently establish both likelihood of success on the merits and irreparable harm. *See, e.g.*, *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011).

Even so, showing irreparable harm is a "non-negotiable hurdle[]." *Cal. Ass'n. of Private Postsecondary Schools v. Devos* (*CAPPS*), 344 F. Supp. 3d 158, 167 (D.D.C. 2018). "A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). At the preliminary injunction stage, a plaintiff may rely on "evidence that is less complete than in a trial" but "bears the responsibility of producing credible evidence sufficient to demonstrate entitlement to injunctive relief." *CAPPS*, 344 F. Supp. 3d at 166–67 (cleaned up).

## III.   Analysis

"Young fails to establish that he will suffer irreparable harm absent a preliminary injunction halting the Committee from meeting at the end of next week. The standard for irreparable harm is particularly high in the D.C. Circuit." *Fisheries Survival Fund v. Jewell*, 236 F. Supp. 3d 332, 336 (D.D.C. 2017). To satisfy this high standard, Young must show that his harm is "both certain and great," *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985), and "beyond re-mediation," *Chaplaincy*, 454 F.3d at 297. He must also show that "the alleged harm will directly result from the action which [he] seeks to enjoin." *Wisc. Gas Co.*, 758 F.2d at 674.

The harm Plaintiffs allege Young will suffer if the Committee's meetings go forward is best understood as the loss of a chance to participate in those meetings. Plaintiffs argue that the EPA refused to adjudicate Young's nomination fairly, thus thwarting his chances at Committee membership, which in turn precluded his participation in the upcoming meetings. *See* ECF No. 8-1 at 45. Plaintiffs also cite the downstream effects of Young's inability to participate in the

meetings, particularly the prospect that the EPA Administrator will enact rules relying on a rec-ommendation from an unbalanced and thus unlawfully constituted Committee. *Id.* These theo-ries pose several problems for irreparable harm purposes.

First, Plaintiffs have not shown that Young's alleged loss of a chance is sufficiently "great" to warrant preliminary injunctive relief. Young competed for just four at-large spots against a pool of about 100 applicants. The EPA staff has broad discretion to recommend candi-dates to the EPA Administrator, and the Administrator also has broad discretion to make final selections. And, it bears repeating, Young has not argued that he has a right to serve on the Committee because his personal perspective is unique in some way among the applicants, even if does differentiate him from those selected. Thus, there is nothing in the record suggesting that Young has lost a "great" chance at being selected to serve on the Committee, and to participate in the upcoming meetings. *Cf. Chaplaincy*, 454 F.3d at 298 ("possible promotions" allegedly barred by a hiring rule do not justify equitable relief). In the end, the Court "cannot ignore that 'some concept of magnitude of injury is implicit in the [preliminary injunction] standards." *E.B. v. U.S. Dep't of State*, 422 F. Supp. 3d 81, 88 (D.D.C. 2019) (quoting *Gulf Oil Corp. v. Dep't of Energy*, 514 F. Supp. 1019, 1026 (D.D.C. 1981)). As this Court has held in the visa lottery con-text, "the certain loss of a tiny . . . chance of a desired benefit cannot suffice under this exacting standard." *Id.* Whatever chance Young may be losing here, the Court has no basis to conclude it was sufficiently "great."

Second, to the extent that Plaintiffs' irreparable harm argument is based on potential downstream effects of the Committee's meetings, such as the EPA's enactment of rules based on the recommendations of an unlawfully unbalanced Committee, it is not clear that *Young himself*

can claim to suffer irreparable harm by those developments.  But even assuming he can, Plaintiffs have not shown that such harm is sufficiently "certain."  Put another way, Plaintiffs have not shown that such harm would "directly result from the action which the movant seeks to enjoin." *Wisc. Gas Co.*, 758 F.2d at 674.  The connection between the Committee's upcoming meetings and any final EPA rulemaking is too attenuated to warrant preliminary relief.  *See, e.g.*, *Feng Wang v. Pompeo*, 354 F. Supp. 3d 13, 26 (D.D.C. 2018) (denying preliminary injunction because challenged rule was too far removed from alleged harm).

Third, and perhaps most importantly, Plaintiffs have not shown that any of these alleged harms are irreparable in that they are "beyond remediation."  *Chaplaincy*, 454 F.3d at 297.  "The possibility that adequate . . . corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."  *Wisc. Gas Co.*, 758 F.2d at 674 (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).  Although the Committee plans to meet at the end of next week, it only makes recommendations to the EPA Administrator.  And the EPA represents that any related rulemaking must go through the required notice and comment period (slated to begin at the earliest in summer 2022) and that any final rules would not be implemented until at least spring 2023.  *See* ECF No. 8-22 at 3.  Thus, should Plaintiffs prevail on the merits soon, any alleged harm could be remedied.[4]  Plaintiffs do not suggest that, at that point, the Court would lack the authority to order the EPA Administrator to reconstitute the Committee lawfully and, if necessary, order the Committee to provide new recommendations relating to the enactment of any new particulate

---

[4] The Court anticipates promptly resolving Plaintiffs' motion for partial summary judgment, given these considerations.

matter air quality regulations. True, Young would have lost a chance to participate in the meetings scheduled to start next week, but he would then have a "fair" chance to be selected as a member of a lawfully reconstituted Committee, participate in its meetings, and play in role in shaping any recommendations. If the Committee proceeds with meeting next week and makes any recommendations to the EPA Administrator, it does so with the risk that it may need to start over.

Plaintiffs also cite a handful of district court cases in this Circuit on irreparable harm, but none present a situation like this one or suggest that they have shown such harm here. In the most recent case, a court granted a preliminary injunction where a challenged regulation would have effectively ended the visa lottery program even though the plaintiffs had already won the lottery for that year. *Filazapovich v. Dep't of State*, 21-cv-943 (APM), 2021 WL 4127726, *24 (D.D.C. Sept. 9, 2021). The plaintiffs in *Filazapovich* argued that because they had won their visa lotteries, they were threatened with the permanent deprivation of a benefit that was guaranteed to them by statute. But the alleged harm here—the loss of an unspecified chance—is different.

*Dunlap v. Presidential Advisory Commission on Election Integrity*, 286 F. Supp. 3d 96 (D.D.C. 2017), is another recent case Plaintiffs raise. In that case, the court granted a preliminary injunction requiring a committee to provide one of its members with materials needed for him to fully participate in its activities. *Id.* at 98. But there, the plaintiff was a member of the committee whose purported harm did not turn on the loss of an unspecified chance. Nor did the plaintiff allege the committee had been unlawfully constituted. Thus, without a preliminary injunction, at the end of the case there would have been no way for the court to remedy the harm plaintiff suffered if he could not fully participate while the case was pending.

Plaintiffs also say a final case here weighs in their favor. In *Public Citizen v. National Economic Commission*, 703 F. Supp. 113 (D.D.C. 1989), the plaintiff sued to challenge a committee meeting scheduled to proceed without public transparency. The Court granted a preliminary injunction, finding irreparable harm in the plaintiff's inability to observe "the decision-making process as it occurs."[5] *Id.* at 129. But that case is distinguishable too, for some of the same reasons as *Dunlap*. Especially because the plaintiff in that case also did not challenge the lawfulness of the committee itself, it is hard to see how the court could have remedied the harm alleged by the plaintiff after the meeting occurred.[6]

In their reply brief, Plaintiffs also argue that Supreme Court precedent "foreclose[s]" the Court from concluding that they have failed to show irreparable harm. ECF No. 22 at 28. Not so. In the case to which they refer, the Supreme Court found that a district court's refusal to enter a settlement agreement was tantamount to refusing to grant an injunction—and thus reviewable on interlocutory appeal—because delay in reviewing the district court's order "might" cause irreparable harm, including that the plaintiffs "might be denied specific job opportunities." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 89–90 & n.16 (1981). But that dicta, in a case in which the Court did not even squarely address what constitutes irreparable harm, surely does not preclude

---

[5] In *National Economic Commission*, the court addressed the merits and the issuance of a permanent injunction but attached its earlier memorandum opinion granting preliminary relief as an appendix. *See* 703 F. Supp. at 121 ("Appendix").

[6] Plaintiffs also cite an out-of-circuit district court case in *N.W. Ecosystem Alliance v. Office of U.S. Trade Rep.*, 1999 WL 33526001, *1 (W.D. Wash. Nov. 9, 1999). But the court there did not grant a preliminary injunction. In that case, a series of conservation groups had argued that their viewpoint had been wrongfully excluded from certain advisory committees. The court found the committees unbalanced, granted summary judgment in their favor, and appears to have characterized their harm as "irreparable" in the sense that it could not be remedied through relief other than a permanent injunction, such as monetary damages. *Id.* at *1, 7.

this Court's conclusion that on this record, Young has not shown he is threatened with irreparable harm.

**IV.     Conclusion**

For all the above reasons, the Court will deny Plaintiffs' Motion for a Preliminary Injunction, ECF No. 8, and reserve judgment in all other respects.  A separate order will issue.


/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: February 16, 2022