**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

S. STANLEY YOUNG *et al.*,

               *Plaintiffs*,

    v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY *et al.*,

          *Defendants*.

Civil Action No. 21-2623 (TJK)

## <u>MEMORANDUM OPINION</u>

Plaintiffs Dr. S. Stanley Young and Dr. Louis Anthony Cox, Jr. challenge the Environmental Protection Agency's efforts to reconstitute several advisory committees that advise the agency on, among other things, particulate matter air quality standards. They say, essentially, that the EPA has unlawfully purged these committees to allow the Biden administration to pursue policies on climate change that the committees' previous membership had thwarted. More specifically, they allege that the reconstituted committees violate the Federal Advisory Committee Act, which requires that their memberships be "fairly balanced" and free of "inappropriate influence" by the appointing authority. And they assert that the EPA violated the Administrative Procedure Act when it reconstituted the committees. Plaintiffs move for partial summary judgment as to one of the committees, and Defendants cross-move. Lurking in the background of the parties' dispute is the legality and propriety of the regulations that the Biden administration is pursuing on air quality standards for particulate matter. But challenges to those regulations are not before the Court. For the reasons explained below, the Court will deny Plaintiffs' motion, grant Defendants' cross-motion, and enter partial judgment in Defendants' favor.

I.    **Background**

In March 2021, the EPA Administrator announced that he was reconstituting two advisory committees subject to the Federal Advisory Committee Act ("FACA"):  the Clean Air Scientific Advisory Committee ("the Committee") and the Science Advisory Board ("the Board").[1]  Plaintiffs, who have significant industry experience, sought membership on both the Committee and the Board but ultimately were not selected when the new members were announced in June 2021. ECF No. 17 ¶ 6.  Before the committees were reconstituted, Dr. Young had served on the Board but not the Committee; Dr. Cox had served on both the Committee and the Board.  *Id.*  One week before disclosing the new Committee members, the EPA announced it would reconsider its December 2020 decision *not* to revise the National Ambient Air Quality Standards (NAAQS) for particulate matter.  ECF No. 17 ¶ 59; ECF No. 17-6.

In October 2021, Plaintiffs sued the EPA, its Administrator, the two committees, and several committee members.  They allege that the reconstitution of these committees violated FACA and the Administrative Procedure Act ("APA") and that they were injured because the Administrator denied them a fair opportunity to compete for membership.[2]  *See* ECF No. 17.  Specifically, they allege that the reconstituted Committee and Board are "unfairly balanced" and not "protected

---

[1] The Court assumes familiarity with FACA, the Committee, and the case generally, as they are described in its earlier opinion.  *See Young v. U.S. EPA*, No. 21-cv-2623 (TJK), 2022 WL 474145 (D.D.C. Feb. 16, 2022).

[2] Although Defendants do not contest Plaintiffs' standing, the Circuit has suggested that individuals who are "directly affected" by the work of a committee have suffered injury-in-fact to challenge a Committee's composition, and other courts have followed suit.  *Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Priv. Sector Surv. on Cost Control*, 711 F.2d 1071, 1074 n.2 (D.C. Cir. 1983); *see, e.g.*, *NAACP Legal Def. & Educ. Fund, Inc. v. Barr*, 496 F. Supp. 3d 116, 130–32 (D.D.C. 2020).

from inappropriate influence," each in violation of FACA.[3]  *Id.* ¶ 7.  Plaintiffs also claim that the Administrator's decision to reconstitute the committees was arbitrary and capricious in several ways, in contravention of the APA.  *Id.* ¶ 8, 98.  For relief, they seek a permanent injunction and writ of mandamus enjoining the committees "from conducting any committee activities" and prohibiting the EPA and the Administrator from "receiving, relying on, or otherwise using any report, advice, or other action" from them.  *Id.* at 53.  They also seek an order requiring the EPA to reconstitute both committees in compliance with FACA.  *Id.*

Plaintiffs moved for a preliminary injunction and for partial summary judgment as to their claims about the Committee only (Counts V–VIII).  ECF No. 8.  Defendants opposed and cross-moved for partial summary judgment.  ECF No. 20.  The Court denied the motion for a preliminary injunction but reserved judgment on the summary judgment motions.  *See Young v. U.S. EPA*, No. 21-cv-2623 (TJK), 2022 WL 474145, at *5 (D.D.C. Feb. 16, 2022).  Since then, the Committee has met, deliberated about the NAAQS for particulate matter, and voted to adopt more stringent standards.  ECF No. 33, 34.  More recently, the EPA transmitted a proposed rule adopting those standards to the White House for its review.  ECF No. 36.  According to Defendants, any final rule will not go through the required notice and comment procedures and be implemented until at least spring 2023.  *See* ECF No. 8-22 at 3.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary judgment is appropriately granted

---

[3] Dr. Young amended the complaint to add Dr. Cox as a Plaintiff after he moved for a preliminary injunction and partial summary judgment.  ECF No. 17.  Dr. Cox later joined Dr. Young's motion. ECF No. 18.

when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). To survive summary judgment, a party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation omitted). Courts "are not to make credibility determinations or weigh the evidence." *Lopez*, 826 F.3d at 496 (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)). But the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

## III.   Analysis

### A.   Federal Advisory Committee Act Claims (Counts V and VI)

#### 1.   The Clean Air Act Does Not Divest the Court of Jurisdiction

The Clean Air Act provides that "any nationally applicable regulations promulgated, or final action taken, by the Administrator under [the Clean Air Act] may be filed only in the United States Court of Appeals for the District of Columbia." 42 U.S.C. § 7607(b)(1). As a threshold matter, Defendants argue that the Court lacks jurisdiction because Plaintiffs' suit challenges the Administrator's nationally applicable final action under the Clean Air Act. *See* ECF No. 20-1 at 20–21. Plaintiffs argue that the Administrator's action reconstituting the Committee was taken under FACA, not the Clean Air Act, and that it was not nationally applicable. *See* ECF No. 22 at 6–7. The Court agrees with Plaintiffs.

The Administrator reconstituted the Committee pursuant to FACA, not under the Clean Air Act.  FACA sets the parameters for legislation—such as the Clean Air Act—"authorizing the establishment of any advisory committee."  5 U.S.C. app. 2 § 5(b).  And as the Circuit has explained, "EPA advisory committees . . . are authorized and regulated by [FACA]."  *Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634, 639 (D.C. Cir. 2020).  Thus, Plaintiffs allege that the Administrator's reconstitution of the Committee violated FACA, not the Clean Air Act.  In contrast, the cases Defendants cite in support of this argument involve suits alleging that the Administrator took final action beyond the authority provided by the Clean Air Act itself.  *See, e.g.*, *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 580–81 (1980); *Royster-Clark Agribusiness, Inc. v. Johnson*, 391 F. Supp. 2d 21, 23 (D.D.C. 2005).  At bottom, the Court is aware of no authority for the proposition that district courts lack jurisdiction over a FACA challenge to an EPA committee.  Rather, other courts in this district, as well as the Circuit, have considered FACA challenges to such committees without dismissing on these grounds.  *See, e.g.*, *Physicians for Soc. Resp. v. Wheeler*, 359 F. Supp. 3d 27, 44 (D.D.C. 2019), *rev'd on other grounds*, 956 F.3d 634 (D.C. Cir. 2020).

## 2.   The APA Does Not Preclude Judicial Review

Defendants also argue that FACA's provisions that apply to the Committee are nonjusticiable under the APA, which provides Plaintiffs' their only cause of action for their FACA claims.

The APA precludes judicial review of "agency action . . . committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  The Supreme Court has recognized two scenarios in which agency action is unreviewable under this provision.  The first pertains to "certain categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'"  *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993).  This scenario includes the "paradigmatic example" of prosecutorial discretion as well as, for example, an agency's determination of how to allocate resources.  *Physicians for Soc. Resp.*, 956 F.3d at 642.  The second scenario involves agency action

that is "presumptively reviewable," *id.*, but that is ultimately insulated from review because the relevant statutes are drawn "in such broad terms that . . . there is no law to apply," *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971).

Relevant here, FACA requires, first, that legislation establishing an advisory committee "require the membership of the advisory committee to be fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." 5 U.S.C. app. 2 § 5(b)(2). Second, FACA also requires that any such legislation "contain appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest." *Id.* § 5(b)(3).

Defendants argue these requirements are nonjusticiable under both the above scenarios because Committee selections are committed to agency discretion by law and FACA supplies no meaningful standards for the Court to apply. ECF No. 20-1 at 21–31. Plaintiffs take the opposite view, arguing that Circuit precedent forecloses Defendants' position and that, in any event, FACA and its implementing guidelines supply workable standards for the Court to apply. ECF No. 8-1 at 38–43. Again, the Court sides with Plaintiffs.

The D.C. Circuit considered whether the "fair balance" provision was justiciable in *Public Citizen v. National Advisory Committee on Microbiological Criteria for Foods* ("*Microbiological*"). 886 F.2d 419 (D.C. Cir. 1989) (per curiam). In that case, the Circuit affirmed, per curiam, the district court's dismissal of a FACA challenge to an advisory committee. *See id.* at 419. But the panel was divided on whether the "fair balance" provision was justiciable: Judge Silberman held that it was not. *See id.* at 430 (Silberman, J., concurring in judgment). Judge Edwards held that it was, citing a prior Circuit opinion that resolved the merits of a fair balance challenge. *Id.* at 432–434 (Edwards, J., concurring in part and dissenting in part). Thus, Judge Edwards concluded

that the question was "not an open issue in this circuit." *Id.* at 433 (Edwards, J. concurring in part and dissenting in part) (citing *Nat'l Anti–Hunger Coal. v. Exec. Comm. of the President's Priv. Sector Surv. on Cost Control*, 711 F.2d 1071, 1074 n. 2 (D.C. Cir. 1983)).  And Judge Friedman adjudicated the merits without specifically addressing justiciability.  *See id.* at 423 (Friedman, J., concurring in judgment).  In sum, two of the three panel members reached the merits and considered whether the challenged committee satisfied FACA's fair balance requirement.

In the Court's view, *Microbiological* binds it and compels it to hold that the "fair balance" provision is justiciable.[4]  True, Judge Friedman did not address the parties' justiciability arguments directly.  But he must have agreed with Judge Edwards that the fair balance provision was justiciable because, in the end, "he judged it."  *NAACP Legal Def. & Educ. Fund, Inc. v. Barr*, 496 F. Supp. 3d 116, 132 (D.D.C. 2020).  On top of that, several other circuits have also cited *Microbiological* for the proposition that the D.C. Circuit has determined the provision to be justiciable.  *See Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 20 n.6 (1st Cir. 2020); *Colo. Env't Coal. v. Wenker*, 353 F.3d 1221, 1232 (10th Cir. 2004); *Cargill, Inc. v. United States*, 173 F.3d 323, 335 & n.23 (5th Cir. 1999).  The Court notes that several courts in this District have doubted that *Microbiological* binds them on this issue, *see, e.g.*, *Physicians for Soc. Resp.*, 359 F. Supp. 3d at 44.  Respectfully, the Court disagrees.  *See NAACP*, 496 F. Supp. 3d at 133.[5]

---

[4] In their reply, Defendants for the first time argue that under *Marks v. United States*, 430 U.S. 188 (1977), and Circuit law interpreting *Marks*, the Court is not bound by the divided three-judge panel in *Microbiological*.  ECF No. 24 at 13.  But the *Marks* rule only provides guidance on how to interpret Supreme Court decisions. *See, e.g.*, *Marks*, 430 U.S. at 193; *Republic of Argentina v. AWG Grp. LTD*, 894 F.3d 327, 334 n.2 (D.C. Cir. 2018).  The Court is unaware of any court that has ever applied the *Marks* rule when interpreting a decision from a three-judge circuit panel.

[5] Even if *Microbiological* is not binding, the Court would still hold that FACA's text and its implementing regulations are justiciable, though it is a close question.  *See Union of Concerned Scientists*, 954 F.3d at 20; *Colo. Env't Coal.*, 353 F.3d at 1232; *Cargill*, 173 F.3d at 335; *but see Ctr.*

Defendants' arguments fare no better on the "inappropriate influence" provision. The Circuit's decision in *Physicians for Social Responsibility* forecloses their argument. *See* 956 F.3d at 643. There, the Circuit held that the inappropriate influence provision was justiciable and determined that FACA's implementing regulations provide judicially manageable standards for courts to apply. *See id.* The Circuit explained that it had found "far more permissive and indeterminate language"—such as "in the interest of justice"—to be justiciable. *Id.* (quoting *Cody v. Cox*, 509 F.3d 606, 610–11 (D.C. Cir. 2007)).

### 3.    "Fair Balance" Claim (Count V)

Plaintiffs claim that the Committee's reconstituted membership violates the "fair balance" provision because there is no "industry representative" on the Committee, and because the new membership uniformly supports the Administrator's views on the current national ambient air quality standards. ECF No. 8-1 at 25–26. They argue that their scientific expertise accumulated through years of work in regulated industries will provide "different perspectives" to the Committee necessary for fair balance. *Id.* at 26. Defendants respond that because the Committee is a

---

for Pol'y Analysis on Trade and Health (CPATH) v. Off. of the U.S. Trade Rep.*, 540 F.3d 940, 946 (9th Cir. 2008). First, FACA mandates that enabling legislation "*shall* . . . require the membership of the advisory committee to be fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." 5 U.S.C. app. 2 § 5(b) (emphasis added). This mandatory directive undermines a claim that the Committee's composition is unreviewable because selections are committed to agency discretion. Second, the phrase "fairly balanced" itself provides guidance, especially in "extreme cases"—which renders the provision justiciable. *NAACP*, 496 F. Supp. 3d at 134 (citing *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 488 (2015)). Admittedly, the phrase is not the most precise, but the "difficulty of defining the boundaries" of a standard does not itself imply nonjusticiability. *Cody v. Cox*, 509 F.3d 606, 610 (D.C. Cir. 2007) ("high quality and cost-effective" are justiciable); *cf. Dep't of Com. v. New York*, 139 S. Ct. 2551, 2568 (2019) (finding justiciable the requirement to conduct census that "fairly accounts for the crucial representational rights"). Third, the General Services Administration has promulgated regulations to implement FACA's various requirements, which supply further standards for courts to apply. *Cf. Physicians for Soc. Resp.*, 956 F.3d at 643 (applying such regulations to resolve claim under inappropriate influence provision).

scientific and technical committee, an industry representative is unnecessary.  ECF No. 20-1 at 34–35.  They argue that the fair balance requirement is satisfied if the Committee has technical experts with varied backgrounds and diverse fields of expertise.  *Id.* at 36.  On this decisive score, the Court agrees with Defendants.  Even if it might be wise to have industry represented on the Committee, the law does not require it.

To begin, the Clean Air Act—the law that establishes the criteria for the Committee—does not require an industry representative.[6]  The statute *does* require that three of the seven membership slots be allocated to a member of the National Academy of Sciences, a physician, and one member representing state air pollution regulators.  *See* 42 U.S.C. § 7409(d)(2)(A).  And although the Administrator must satisfy the "fair balance" requirement in selecting the remaining four members, "how" to achieve fair balance "necessarily lies largely within the discretion" of the Administrator absent a specific statutory directive.  *Microbiological*, 886 F.2d at 424 (Friedman, J., concurring in judgment); *see also id.* at 434 (Edwards, J., concurring in part and dissenting in part) (explaining that "the difficulty of determining precisely what constitutes a 'fair balance' may incline courts to be deferential in reviewing the composition" of a committee).

Significantly, courts "have paid special attention to the mandate" of committees when adjudicating fair balance claims.  *Microbiological*, 886 F.2d at 435 (Edwards, J., concurring in part and dissenting in part).  Committees with technical or scientific mandates can satisfy the fair balance requirement without a representative from a regulated industry or party.  *See, e.g.*, *id.* at 425 (Friedman, J., concurring in judgment); *Nat'l Anti-Hunger Coal.*, 711 F.2d at 1074.  This is so

---

[6] In contrast, a previous version of the statute potentially required that the committee evaluating the national ambient air quality standards have an industry representative.  *See* Clean Air Act Amendments of 1970, Pub. L. 91-604, 84 Stat. 1676, 1679 (1970) (requiring committee to have "technically qualified individuals representative of State and local governments, industry, and the academic community").

because representatives from affected parties are not needed for a committee to conduct "techno-cratic" tasks, such as scientific peer review. *Cargill*, 173 F.3d at 337. Consistent with this ap-proach, courts have found scientific committees fairly balanced when their membership repre-sented diverse scientific backgrounds and areas of expertise. *See, e.g.*, *Microbiological*, 886 F.2d at 424 (Friedman, J., concurring in judgment); *Cargill*, 173 F.3d at 337. Thus, the reasoning of these cases suggests that a committee tasked with providing scientific advice on air quality stand-ards can survive a fair balance challenge under FACA even without an industry representative who might oppose more stringent regulation.

The Committee has a technical and scientific mandate.[7] Its primary task is to provide sci-entific expertise and advice on the EPA's national ambient air quality standards, which limit at-mospheric concentration of certain pollutants. The Committee was authorized by the Clean Air Act, which requires the Administrator to "appoint an independent *scientific* review committee" to "complete a thorough review" of the highly technical national ambient air quality standards. 42 U.S.C. § 7409(d) (emphasis added). The Clean Air Act also charges the Committee with other tasks rooted in scientific knowledge, such as "advis[ing] the Administrator of areas in which ad-ditional knowledge is required" to review the national ambient air quality standards and to "de-scribe the research efforts necessary to provide the required information." *Id.* § 7409(d)(2)(C). Consistent with statutory directives, the Committee's charter states that its goal is to "review the

---

[7] In contrast, another committee—the Clean Air Act Advisory Committee—is charged with advis-ing the EPA on "policy and technical issues" and the "integration of existing policies" related to the Clean Air Act. *See* Clean Air Act Advisory Committee Charter, available at https://www.epa.gov/sites/default/files/2020-11/documents/caaac_2020_charter_renewal_fi-nal.pdf. Defendants point out that "seventeen of the forty members" on that committee are "affil-iated with industry." ECF No. 20-1 at 14.

criteria and standards promulgated and provide other related scientific and technical advice."[8] And the parties' declarations accompanying their motions confirm that the Committee's mandate is scientific, and that Committee members typically possess technical expertise. For example, Dr. Cox's declaration in support of Plaintiffs' motion details the scientific and statistical analyses the Committee conducts and notes the need to "apply well-known and rigorous techniques of mainstream causal modeling." ECF No. 8-2 at 4–5.[9] In short, both parties seem to agree that the Committee's mandate is "primarily technical and scientific." *Microbiological*, 886 F.2d at 420 (Friedman, J., concurring in judgment).

Given the Committee's technical and scientific mandate, the Court finds that the reconstituted membership satisfies the fair balance requirement. The Committee's members have varied technical backgrounds across scientific and medical disciplines, including inhalation toxicology, air pollution expertise, respiratory medicine, ecology, exposure assessment, and biostatistics.[10] The members' cross-section of expertise and professional training likewise satisfies GSA regulations. *See* 41 C.F.R. § 102-3.60(b)(3) ("Committees requiring technical expertise should include persons with demonstrated professional or personal qualifications and experience relevant to the functions and tasks to be performed."). Plaintiffs may be right that the Administrator selected

---

[8] The Committee charter is available at
https://csac.epa.gov/ords/sab/r/sab_apex/files/static/v403/CASAC%20Charter.pdf

[9] Likewise, Dr. Paustenbach explains that the Committee is made up of "scientists" who advise the EPA on "the weakest and most compelling research" available related to air quality standards. ECF No. 8-4 at 3.

[10] The Committee members are Dr. Michelle Bell; Dr. James Boylan; Dr. Judith C. Chow; Dr. Mark W. Frampton; Dr. Christina H. Fuller; Dr. Alexandra Ponette-González; Dr. Elizabeth A. Sheppard. Full biographies can be found on the Committee website.
*See* https://csac.epa.gov/ords/sab/f?p=113:29:4162462699967:::RP,29:P29_COMMIT-TEEON:CASAC.

members that all share similar views on the need for more stringent regulation of air quality stand-ards—a highly charged, political issue—even if two of the new Committee members also served on the Committee under the Trump administration.  But the Committee's membership—drawn from diverse technical and scientific fields—satisfies all that FACA requires, whatever the wisdom of the Administrator's omission of an industry representative.  *See Microbiological*, 866 F.2d at 424 (Friedman, J., concurring in judgment).

Plaintiffs rely on *NAACP* for the proposition that "fair balance" requires an industry repre-sentative.  *See* ECF No. 8-1 at 25.  But that case is inapt.  There, a committee was tasked with "study[ing] issues related to law enforcement and the administration of justice and mak[ing] rec-ommendations to the Attorney General . . . on actions that can be taken to prevent, reduce, and control crime, increase respect for the law, and assist victims."  *NAACP*, 496 F. Supp. 3d at 138 (internal quotation marks omitted).  The committee consisted exclusively of law enforcement of-ficials, and the court held that this composition violated FACA's "fair balance" provision.  *See id.* at 144.  But the committee in that case was not a technical and scientific committee.  Moreover, the defendants there did not even try to argue that the committee was fairly balanced; they argued only that FACA did not apply at all.  The more analogous case to the instant one is *Cargill*.  There, the Fifth Circuit rejected a fair balance challenge to a mining safety committee without an industry representative because the committee had scientists well-versed in "the scientific method" with "expertise in many fields related to the subject matter."  *Cargill*, 173 F.3d at 337.  So too here.

### 4.    "Inappropriate Influence" Claim (Count VI)

Plaintiffs next claim that the reconstituted Committee violates FACA because its "advice and recommendations" will be "inappropriately influenced by the appointing authority."  ECF No. 8-1 at 29.  They argue that the EPA made "no attempt" to guard against inappropriate influence

and that the Committee's composition is unlawful because five members are "principal investigators" on EPA grants, and thus those members will "rubberstamp the Agency's preferred agenda." *Id.* at 29–31.  Defendants respond by arguing that sufficient safeguards are in place against inappropriate influence.  They also contend that Plaintiffs cannot challenge the Committee's individual members under FACA, but even if they could, the members—and therefore the Committee—are free from inappropriate influence and can provide independent advice.  *See* ECF No. 20-1 at 37–43.  In the Court's view, here too Defendants have the better argument.

FACA requires enabling legislation to "contain *appropriate provisions* to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment."  5 U.S.C. app. 2 § 5(b)(3) (emphasis added).  In construing this provision, courts have focused on whether sufficient structural protections against inappropriate influence are in place, rather than inquiring if specific committee members are subject to inappropriate influence.  *See, e.g.*, *Microbiological*, 886 F.2d at 425 (Friedman, J., concurring in judgment); *id.* at 430 (Silberman, J., concurring in judgment); *NAACP Legal Def. & Educ. Fund, Inc. v. Wilkinson*, No. 20-cv-1132 (JDB), 2021 WL 723993, at *7 (D.D.C. Feb. 24, 2021).  Thus, the Court's task here is to determine if sufficient safeguards ensure that the Committee can provide "independent judgment" to the EPA.  5 U.S.C. app. 2 § 5(b)(3).

The Court finds that the safeguards in place are sufficient to meet the legal standard.  Office of Government Ethics ("OGE") and EPA ethics regulations bind the Administrator when he selects

Committee members, and both sets of regulations ensure that an individual with a bona fide con-

flict of interest cannot serve on the Committee.[11]  OGE regulations state that grant recipients serv-

ing on an advisory committee "may participate in any particular matter of general applicability . .

. provided that the matter will not have a special or distinct effect on the employee or employer

other than as part of a class."  5 C.F.R. § 2640.203(g).  Thus, for example, a chemist employed by

a major pharmaceutical company developing a vaccine may serve on a committee advising on

regulations for clinical trials of vaccines addressing the same condition.  *Phys. for Soc. Resp.*, 956

F.3d at 640–41.  But an employee of a university may not serve on a committee advising on that

specific university's performance, because the committee's advice is not on "a matter of general

applicability."  *Id.* at 641.  EPA regulations also reflect this principle.  The EPA's Peer Review

Handbook, for example, states that "when a scientist is awarded an EPA research grant through an

investigator-initiated, peer-reviewed competition, there generally should be no question as to that

scientist's ability to offer independent scientific advice to the Agency *on other projects*."  EPA,

*Peer   Review   Handbook*   77   (4th   ed.   2015)   (emphasis   added),   *available   at*

https://www.epa.gov/sites/default/files/2016-03/documents/epa_peer_review_hand-

book_4th_edition.pdf.  And the EPA has its own rules in place to guard against conflicts and in-

appropriate influence, such as requiring committee members to file financial disclosure forms.  *See*

ECF No. 20-2 ¶ 12.  For all these reasons, the "EPA has long allowed individual recipients of EPA

grants to serve on its scientific advisory committees, provided they do not address matters related

to their individual grants."  *Phys. for Soc. Resp.*, 956 F.3d at 641.  And no court has suggested

---

[11] In addition, committee members are prohibited from "participating personally and substan-
tially in an official capacity in any particular matter in which, to his knowledge, he . . . has a fi-
nancial interest, if the particular matter will have a direct and predictable effect on that interest."
5 C.F.R. § 2635.402(a) (citing 18 U.S.C. § 208(a)).

these "inappropriate influence" protections fail to pass muster under FACA.  *See Microbiological*, 886 F.2d at 425–26 (Friedman, J., concurring in judgment); *Cargill*, 173 F.3d at 339.

Defendants point out that in 2017, the Administrator decided to categorically bar EPA grant recipients from serving on advisory committees.  But the D.C. Circuit vacated that directive because it "represent[ed] a major break" from past EPA policy that it had not adequately explained. *Physicians for Soc. Resp.*, 956 F.3d at 645.  Maybe that is the better approach.  But it hardly means the current one is insufficient to satisfy FACA.

Finally, even if the Court could consider Plaintiffs' challenge to specific Committee members, those arguments come up short too.  Plaintiffs contend only that the Committee's recommendations are subject to inappropriate influence because five of the seven members are "principal investigators" on EPA grants and that several receive "multi-million dollar" grants.  ECF No. 8-1 at 29.[12]  Again, courts have rejected the argument that a committee is subject to inappropriate influence just because members receive grants from the appointing authority.  *See Microbiological*, 886 F.2d at 425–26 (Friedman, J., concurring in judgment); *Cargill*, 173 F.3d at 339.  This is particularly relevant where, as here, the EPA is a major sponsor of environmental science research across disciplines.  *Cf. Cargill*, 173 F.3d at 339 (finding no inappropriate influence where grant recipients served on committee of agency that was a "major sponsor" of research in the field). Plaintiffs have furnished no evidence connecting the Committee's work on the NAAQS to members' research grants specifically.  Nor have they demonstrated that the Committee's advice on the

---

[12] Defendants dispute that certain Committee members received EPA grants.  *See, e.g.*, ECF No. 20-1 at 40; ECF No. 20-3 ¶ 9.  But given the Court's conclusion that allowing grant recipients to serve on the Committee does not itself violate FACA, this factual dispute is not "material" for summary judgment purposes.  Fed. R. Civ. P. 56(a).

NAAQS is not a matter of broad applicability and poses a unique conflict of interest for any member.  At bottom, that several scientists on the Committee may receive grants for research projects is not enough to violate FACA.  In sum, Plaintiffs have not shown that the Committee cannot provide independent scientific judgment on the NAAQS for particulate matter.

    **B.**    **APA Claim (Count VII)**

Plaintiffs next claim that the reconstitution of the Committee was "procedurally unlawful" and amounted to arbitrary and capricious agency action that violates the APA.  ECF No. 8-1 at 32; 5 U.S.C. § 706(2)(A).  They appear to make three arguments: (1) that the EPA failed to "articulate a satisfactory explanation" for reconstituting the Committee; (2) that the EPA failed to offer a "reasonable explanation" for selecting grant recipients; and (3) that the Administrator failed to consider alternatives to reconstituting the Committee.  ECF No. 8-1 at 32–37.

Initially, Defendants argue that Plaintiffs' arbitrary and capricious claims are also nonjusticiable.  They say—like the FACA claims—that because selection of Committee members is "committed to agency discretion," the APA precludes review.  ECF No. 20-1 at 31–32.  But for reasons already discussed, the APA does not preclude review of the Administrator's actions on this ground.

For their first APA argument, Plaintiffs rely on *Motor Vehicles Manufacturers Association v. State Farm*, in which the Supreme Court held that agencies must "articulate a satisfactory explanation" for agency actions.  463 U.S. 29, 43 (1983).  They contend that the EPA's announcement was defective because it failed to explain how the reconstituted Committee would comply with FACA.  Not so.  For one thing, the Court is aware of no authority—and Plaintiffs present none—requiring the EPA to articulate how the reconstituted Committee would comply with FACA specifically.  And of course, the EPA could not have justified the makeup of the Committee under

FACA—which was not finalized until June 2021—when it announced in March 2021 that the Committee would be reconstituted.

All the EPA had to explain was why it was seeking to reconstitute the Committee, and its explanation on that front was more than sufficient. The EPA explained in an official press release that Administrator was reconstituting the Committee to correct, in his view, "decisions made in recent years" by the previous administration, including the elimination of "key air pollution panels" and deviation from the "standard process for appointing committee members." *See* ECF No. 28-1 at 87. The announcement noted that the Administrator was doing so to obtain "the best possible scientific insight." *Id.* at 86. And it also explained that the Administrator would solicit nominations and encouraged former members to reapply. *Id.* at 87. Plaintiffs quite obviously disagree with the Administrator's assessment of the Trump administration's policies. But the EPA did not fail to provide "reasoned explanation" for his decision to reconstitute the Committee. *Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1037 (D.C. Cir. 2012) (quoting *FCC v. Fox Tel. Stations, Inc.*, 556 U.S. 502, 514 (2009)).

Plaintiffs next assert that the EPA did not explain the decision to allow grant holders to serve on the Committee, which they characterize as the agency "chang[ing] course." ECF No. 8-1 at 34. But this claim starts from a faulty premise—that allowing grant holders to serve on the Committee departed from past EPA policy. As discussed earlier, the EPA has long allowed grant holders to serve on advisory committees, consistent with its ethics rules. In fact, ironically enough, and again as already discussed, the D.C. Circuit vacated a 2017 directive that would have barred grant recipients from committee service because that directive "represent[ed] a major break" from past EPA policy that it had not adequately explained. *Physicians for Soc. Resp.*, 956 F.3d at 645.

Thus, in context, the Administrator's decision to consider—and ultimately select—grant recipients for membership amounts to no change in policy at all.

Plaintiffs' final APA argument is that the Administrator's decision to reconstitute the Committee was arbitrary and capricious because he ignored "less drastic" alternatives that were "within the ambit of the existing policy."  ECF No. 8-1 at 35.  They argue that "nothing about [the EPA's] reasoning suggests that firing the existing Committee *en masse* . . . was the only solution."  *Id.* But the EPA explained that the Administrator wanted to remedy what at least he characterized as "irregularities" in the selection process—including the application of the vacated directive barring grant recipients from membership—and so it makes sense to have restarted the selection process from scratch.  *See* ECF No. 28-1 at 87.  And in any event, the changes to the Committee's membership turned out to be not as wholesale as Plaintiffs suggest; the Administrator ended up selecting two members who served on the Committee under the Trump administration.  Finally, Plaintiffs present no evidence refuting Defendants' representations that the Administrator considered the applications of all 115 nominees, including former Committee members such as Dr. Cox.  ECF No. 20-2 ¶ 15.

### C.    Mandamus Claim (Count VIII)

Finally, Plaintiffs allege that the Committee is subject to mandamus because "the Committee is clearly not in compliance with the law."  ECF No. 17 ¶ 131.  The Mandamus Act "confers jurisdiction on the district court over actions 'in the nature of mandamus to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff.'" *Davidson v. U.S. Dep't of State*, 113 F. Supp. 3d 183, 189 (D.D.C. 2015) (quoting 28 U.S.C. § 1361).  Mandamus is a "drastic" form of relief, *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005), and is appropriate only when the plaintiff has a "clear right to relief,"

the defendant has a "clear duty to act," and there is "no other adequate remedy available." *Walpin v. Corp. for Nat'l & Cmty. Servs.*, 630 F.3d 184, 187 (D.C. Cir. 2011) (cleaned up).

For the reasons discussed, the EPA has not violated FACA or the APA, and therefore Plaintiffs do not have a clear right to relief.  Nor have Plaintiffs established that they lack some other adequate remedy.  "[T]hat Plaintiffs' APA claim has failed in these circumstances does not prevent the APA from being an 'adequate means to attain relief.'"  *Citizens for Resp. and Ethics in Washington v. SEC*, 916 F. Supp. 2d 141, 152 (D.D.C. 2013) (quoting *Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*, 426 U.S. 394, 403 (1976)).  As a result, Plaintiffs' claim for mandamus fails along with the others.

## IV.   Conclusion

For all the above reasons, the Court will deny Plaintiffs' motion for partial summary judgment and grant Defendants' cross-motion for the same.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 30, 2022

19